# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TODD COURSER

     Plaintiff

v.

RADISSON HOTELS INTERNATIONAL, INC., a Delaware corporation, RADISSON GROUP, INC., a Minnesota corporation, CARLSON REZIDOR HOTEL GROUP, an international partnership, BLOCK 100 LIMITED PARTNERSHIP, a Michigan limited partnership, and WINEGARDNER & HAMMONS, INC., an Ohio corporation, and WINEGARDNER & HAMMONS HOTEL GROUP, LLC, a Delaware limited liability company, and VINCENT KRELL

     Defendants.

Case No. _____

HON. _____

---

Matthew S. DePerno (P52622)
DEPERNO LAW OFFICE, PLLC
Attorney for Plaintiff
951 W. Milham Avenue
PO Box 1595
Portage, MI 49081
(269) 321-5064

---

**THERE ARE SIX (6) OTHER PENDING AND UNRESOLVED CIVIL ACTIONS ARISING OUT OF THE TRANSACTIONS OR OCCURRENCE ALLEGED IN THIS COMPLAINT:**

1. ***Cindy Gamrat v Joshua Cline, Joseph Gamrat, and David Horr*, United States District Court for the Western District of Michigan, Southern Division, Case No. 1:16-cv-1094**

2. ***Todd Courser v Keith Allard, Benjamin Graham, and Joshua Cline*, United States District Court for the Western District of Michigan, Southern Division, Case No. 1:18-cv-00874**

3. ***Todd Courser v Michigan House of Representatives, Kevin G. Cotter, Tim L. Bowlin, Brock Swartzle, Norm Saari, Edward McBroom, and Hassan Beydoun*, United States District Court for the Western District of Michigan, Southern Division, Case No. 1:18-cv-00882**

4.  *Todd Courser v Chad Livengood and The Detroit News, Inc.*, Washtenaw County Circuit Court, Case No. 18-831-CZ

5.  *Cindy Bauer v Michigan House of Representatives*, State of Michigan, Court of Claims, Case No. _____.

6.  *Todd Courser v Joseph Gamrat and David Horr*, Kalamazoo County Circuit Court, Case No. _____.

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, TODD COURSER ("COURSER"), by and through his attorneys, DePERNO LAW OFFICE, PLLC and for his Complaint against RADISSON HOTELS INTERNATIONAL, INC., a Delaware corporation, RADISSON GROUP, INC., a Minnesota corporation, CARLSON REZIDOR HOTEL GROUP, an international partnership, BLOCK 100 LIMITED PARTNERSHIP, a Michigan limited partnership, WINEGARDNER & HAMMONS, INC., an Ohio corporation, WINEGARDNER & HAMMONS HOTEL GROUP, LLC, a Delaware limited liability company, and VINCENT KRELL, a Michigan resident, states the following:

### JURISDICTION and VENUE

1.  This is an action pursuant to 18 U.S.C. § 2511 and applicable state law.

2.  This action also arises out of Courser's claims to enforce their rights arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*, as amended.

3.  This Court also has original jurisdiction pursuant to 28 U.S.C. Section § 1331 (as this action involves a federal question and the laws of the United States).

4.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. Section § 1332. Some of the Defendants are citizens of different states and the amount in controversy is greater than $75,000.

2

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Courser's state-law claims that are related to, and form part of, the same case or controversy. It is appropriate that this Court exercise supplemental jurisdiction over the state law claims because they involve the same parties and operative facts as the federal claims. Therefore, the Court's exercise of supplemental jurisdiction will further economy, convenience, and fairness to the parties.

6.      The transactions that give rise to this cause of action occurred in the State of Michigan.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8.      Plaintiff requests trial by jury, pursuant to Fed. R. Civ. P. 38.

## PARTIES

9.      Plaintiff TODD COURSER ("Plaintiff") is an individual residing in Lapeer County, Michigan. Plaintiff was the duly elected State Representative for the 82nd District and, as such, a member of the Michigan House of Representatives, until he was unlawfully forced to resign his position on September 11, 2015.

10.     Upon information and belief, Defendant RADISSON HOTELS INTERNATIONAL, INC. ("RHI") is a Delaware corporation with its headquarters located at 701 Carlson Parkway, Minnetonka, MN 55350. Radisson Hotels does business in Michigan and operates the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

11.     Upon information and belief, Defendant RADISSON GROUP, INC. ("RGI") is a Minnesota corporation with its headquarters located at 701 Carlson Parkway, Minnetonka, MN 55350. Radisson Group does business in Michigan and operates the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

12.     Upon information and belief, Defendant CARLSON REZIDOR HOTEL GROUP ("Carlson") in an international partnership with headquarters located at 701 Carlson Parkway, Minnetonka, MN 55350. Carlson does business in Michigan and operates the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

13.     Upon information and belief, Defendant BLOCK 100 LIMITED PARTNERSHIP ("Block 100") is a Minnesota limited partnership with headquarters located at 512 Nicollet Mall, Minneapolis, MN, 55402. W&H Inc. does business in Michigan and manages the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

14.     Upon information and belief, Defendant WINEGARDNER & HAMMONS, INC. ("W&H Inc.") is an Ohio corporation with its headquarters located at 4243 Hunt Road, Cincinnati, OH 45242. W&H Inc. does business in Michigan and operates the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

15.     Upon information and belief, Defendant WINEGARDNER & HAMMONS HOTEL GROUP, LLC. ("W&H Group") is a Delaware corporation with its headquarters located at 4243 Hunt Road, Cincinnati, OH 45242. W&H Group does business in Michigan and operates the Radisson Hotel Lansing at the Capitol, in Lansing, Michigan.

16.     RHI, RGI, Carlson, Block 100, W&H Inc. and W&H Group are hereinafter collection referred to as "The Radisson Defendants".

17.     Upon information and belief, Defendant VINCENT KRELL ("KRELL") is a resident of Kentucky or Michigan.

## COMMON ALLEGATIONS

18.     RHI, RGI, and Carlson operate guest lodging systems (commonly referred to as hotels) throughout the United States and abroad, including the Radisson Hotel Lansing at the

4

Capital, located at 111 North Grand Avenue, Lansing, Michigan 48933 (the "Radisson Hotel Lansing"). RHI, RGI, and Carlson also license the "Radisson" trade name, marks, and business systems in connection with the operation of their hotels.

19.     Block 100 owns the Radisson Hotel Lansing under a license agreement between RHI, RGI, and Carlson with respect to the Radisson Hotel Lansing.

20.     W&H Inc. and W&H Group manage the Radisson Hotel Lansing for Block 100, RHI, RGI, and Carlson.

21.     Upon information and belief, W&H Inc. and W&H Group employ the management-level personnel at the Radisson Hotel Lansing, which are leased, in some capacity, to Block 100, RHI, RGI, and/or Carlson.

22.     Upon information and belief, all other employees at the Radisson Hotel Lansing are employed by Block 100.

23.     In the winter of 2015, Courser stayed at the Radisson Hotel Lansing.

24.     It later became known that The Radisson Defendant employees and staff were granting and assisting unauthorized agents physical access to Courser's rooms at the Radisson Hotel Lansing.

25.     In fact, The Radisson Defendant employees and staff allowed and actively assisted unauthorized agents, including Krell, to secretly and repeatedly enter Courser's rooms at the Radisson Hotel Lansing.

26.     The Radisson Defendant employees and staff also allowed and actively assisted unauthorized agents, including Krell, to secretly enter Courser's hotel rooms to install illegal surveillance equipment in the Courser's hotel room at the Radisson Hotel Lansing.

5

27. The Radisson Defendant employees and staff passed surveillance information about Courser to agents, including Krell, who were conducting surveillance on Courser to gain leverage on Courser, extort him, and have him removed from office.

28. The Radisson Defendant employees and staff allowed and actively assisted unauthorized agents, including Krell, to secretly and repeatedly access Courser's hotel account for reservation information and account statements.

29. The Radisson Defendant employees and staff allowed and actively assisted unauthorized agents, including Krell, to secretly and repeatedly access Courser's hotel account by sending emails about Courser's account statements including reservation and billing information, as well as key card activity on Courser's hotel rooms at the Radisson Hotel Lansing.

30. The Radisson Defendant employees and staff allowed and actively assisted unauthorized agents, including Krell, to secretly receive surveillance times of the arrival and departure of Courser's vehicle at the Radisson Hotel Lansing.

31. Upon information and belief, the Radisson Defendants employees and staff were paid by unauthorized agents for their release of Courser's information electronically, physically and by allowing illegal access to Courser's hotel rooms at the Radisson Hotel Lansing.

32. Courser met with the Radisson Defendant management regarding the status of Courser's account and the breach of Courser's account information.

33. The Radisson Defendant management assured Courser that no further breaches would occur. The Radisson Defendant management claimed the access to Courser's hotel account was an accident and that no one had breached Courser's hotel rooms or Courser's personal data. This was untrue. The Radisson Defendant employees and staff were actively engaged in assisting unauthorized agents to access Courser's electronic information at the

6

Radisson Hotel Lansing, provide onsite surveillance through its personnel, and finally allow access to the Courser's hotel rooms.

34.     The Radisson Defendants allowed for continued access to electronic accounts and to Courser's hotel rooms even after the Defendant management promised that no one who was unauthorized could enter Courser's hotel rooms.

35.     Defendant Krell, did in fact, with the help of the Radisson Defendants, access Courser's electronic accounts and Courser's hotel rooms at the Radisson Hotel Lansing.

36.     The Radisson Defendants allowed unauthorized access to Courser's hotel room for recordings to be made of Courser. These recordings caused irreparable harm to Courser.

37.     Defendant Krell, did in fact, with the help of the Radisson Defendants, access to Courser's hotel room for recordings to be made of Courser. These recordings caused irreparable harm to Courser.

38.     All Defendants broke numerous laws as The Radisson Defendants allowed access to Courser's hotel accounts and Courser's hotel rooms and Defendant Krell did access Courer's hotel account and Courser's hotel rooms to further the surveillance of the conspiracy and the extortion plot to remove Courser from office. This included, but is not limited to:

   a.     Fictitious email addresses were added to Courser's personal Radisson Hotel Lansing accounts by Defendants and The Radisson Defendants' staff several times, compromising statements and giving access to Courser's personal information.

   b.     An extortion text sent to Courser revealed The Radisson Defendants' employees and staff were being paid to provide information, monitor Courser's hotel rooms and provide physical access to Courser's hotel rooms.

   c.     Text messages from different co-conspirators, of the extortion plot to remove Courser from office, revealed that the Defendants had provided information to the co-conspirators allowing access to Courser's information from Defendants, physical access to the rooms and updates from The Radisson Defendants' employees and staff on the rooms themselves. This happened even after Courser met with The Radisson Defendants' management and was assured no information

7

about Courser's stay at the Radisson Hotel Lansing was being broadcast out. The information and access was still being provided to the co-conspirators, of the extortion plot to remove Courser from office.

d.      All Defendants and The Radisson Defendants' employees and staff were actively providing private information illegally to unauthorized agents who were extorting Courser and allowing hotel room access to unauthorized agents. Updates provided to the unauthorized agents involved in the extortion plot, by the The Radisson Defendants' employees and staff, included emails to the unauthorized agents regarding Courser's hotel accounts, temperature of Courser's hotel rooms, lights on or off in Courser's hotel rooms, shower curtain placement in Courser's hotel rooms, luggage placement in Courser's hotel rooms, listening devices in Courser's hotel rooms, audio and video from Courser's hotel rooms, as well as physical entry and exiting the hotel time stamps of Courser  and arrival and departure of Courser's vehicle at the hotel.

e.      Courser was told by The Radisson Defendants' employees and staff that Courser's personal information including reservations information, room number, and payment information were automatically sent to the unauthorized email addresses attached to Courser's account.

f.      Upon information and belief, later through a Michigan State Police ("MSP") investigation of the extortion plot to remove Courser from office, it was determined that the co-conspirators were gaining illegal access to Courser's Radisson Hotel Lansing rooms and hotel information via The Radisson Defendant's employees and staff.

g.      Defendant Krell was, in fact, one of the co-conspirators who gained illegal access to Courser's Radisson Hotel Lansing rooms and hotel information via The Radisson Defendant's employees and staff.

h.      Texts between some of the known unauthorized agents and others clearly show that the unauthorized agents had access to Courser's personal information, hotel account, reservations, time stamps on Courser's arrival and departure, room numbers and payment information.

(1)     "I just think it's strange that both beds are used. I typically sleep in one and put my suitcase or bag on the other. You? Heat was high too which is just the way Cindy likes it."

(2)     "Housekeeping usually makes both beds when they clean each day so both beds used yesterday?"

(3)     "FYI She checked in at 1:29a and he checked in at 7:51a Tuesday morning."

(4)     "And he checked in at 7:51 Tuesday morning."

8

    (5)    "Hotel room is considered private."

    (6)    "Hotel has now told me that his reservation is for Tuesday and Wednesday, not Monday and Tuesday."

    (7)    "By the way, he obviously didn't take a shower this am as the shower curtain was 'out' of the tub? Must have had a bath last night?"

    (8)    "Yeah some one was in both of those beds."

    (9)    "His clothes are still there."

    (10)    "Have you checked if ass is staying there this week?"

    (11)    "when I called that morning they said there were two reservations"

    (12)    "He hasn't checked out yet."

    (13)    "But he is scheduled to check out."

    (14)    "What the f@$& her room?" "His"

    (15)    "Was looking for potential evidence like trash or a wrapper. Nothing – which doesn't say a whole lot though."

    (16)    "What would you make of this? Normal or abnormal?

    (17)    "the room is in his name."

    (18)    "Next to each other?" "Under todds name again?" "Don't know and yes."

    (19)    "Todd turned off his light around 6:20"

i.    Courser met several times with The Radisson Defendant managers to share concerns about the breach of security of Courser's privacy.

j.    Courser was assured by The Radisson Defendant management that the failures and security breaches would not be repeated, but unbeknownst to Courser that his personal information was continuing to be released by all Defendants to the unauthorized agents who then used this information in the extortion plot to remove Courser from office.

39.    The information received from Defendants was used in an extortion plot, to remove Courser from office, for nearly 5 months in a series of anonymous texts that resulted in a worldwide scandal that ended with Courser resigning from office.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

40.     The above deleted texts taken from Defendants' phones taken by the Michigan State Police ("MSP") reveal the connection with the Radisson surveillance:

41.     The illegal access to Courser's hotel room, Courser's hotel account, Courser's personal information stored at the Radisson Hotel Lansing, and the physical surveillance done by Defendants, that was allowed by Defendants, did irreparable harm to Courser.

## COUNT 1
## VIOLATIONS OF RICO; 18 U.S.C. § 1962(a), (b), and (c)

42.     Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

### CULPABLE RICO PERSONS

43.     All Defendants in this matter are RICO persons.

### RICO ENTERPRISE

44.     The RICO enterprise consists of all Defendants who, associated in fact, worked through the enterprise to commit a pattern of racketeering, which includes the specific predicate acts alleged herein.

### INTERSTATE OR FOREIGN COMMERCE

45.     Defendants' racketeering activity affected interstate commerce.

46.     Telephone conversations, correspondence, documentation, and other communication, as described herein, was used the U.S. Mail and interstate wires.

47.     Also, the pattern of racketeering crossed state lines when Defendants provided financing, payments, U.S. Mail, and interstate wires in an effort to remove Courser from office and to damage his livelihood, all with the intent to engage in illegal wiretapping and eavesdropping and to promote a sensational story for profit.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)

48.     Therefore, the activity of the enterprise and the predicate acts of racketeering affect interstate commerce.

*PATTERN OF RACKETEERING*

49.     Defendants have engaged in a long-term pattern of racketeering activity, which has benefitted the criminal RICO enterprise and harmed Courser.

50.     As described in this Complaint, some Defendants started the scheme to violate federal and state laws and then spy on Courser in order to "dig up dirt" on him in violation of federal and state laws. This scheme involved illegal wiretapping and eavesdropping and purchasing favors and information from The Radisson Defendants through Defendant Krell, as a co-conspirator. Information obtained was then used to extort Courser. The illegally obtained information was then provided to The Detroit News for broadcast around the world. The information was then disseminated to the State of Michigan agencies, including the Michigan State Police, Michigan House of Representatives, and Michigan Attorney General in order to remove Courser from office, extort, and bring criminal charges..

51.     Defendants conspired to earn a profit through a process of fraud and misrepresentation of material facts, to advance their own agendas and to harm Courser.

*RACKETEERING ACTIVITY*

52.     Defendants engaged in a pattern of racketeering activity that harmed Courser, including additionally incurred legal costs, the inability to earn money, the loss of property rights and profits, and a violation of his due process, equal protection, and other Constitutional rights and in violation of various federal and state laws.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

## *VIOLATIONS OF MCL § 750.539C, 539D, 539E AND 750.540*

53.    Defendants violated MCL 750.540 when they conspired to and did (in order to aid the conspiracy) willfully and maliciously tape or otherwise make unauthorized connections to an electronic medium of communication of Courser.

54.    Defendants violated MCL 750.539c when they conspired to and did (in order to aid the conspiracy) willfully use a device to eavesdrop upon the conversations of Courser without the consent of all parties to the conversation.

55.    Defendants violated MCL 750.539d when they conspired to and did (in order to aid the conspiracy) install listening devices in a private place without the consent of Courser (and others) who were entitled to privacy in order to observe, record, transmit, or eavesdrop upon the sounds and events in that place.

56.    Defendants violated MCL 750.539d when they conspired to and did (in order to aid the conspiracy) distribute and disseminate or transmit for access a recording they knew to be obtained in violation of such section.

57.    Defendants violated MCL 750.539e when they conspired to and did (in order to aid the conspiracy) use or divulge information they knew or reasonably knew or should have known was obtained in violation of MCL 750.539b, 539c, or 539d.

## *VIOLATIONS OF 18 U.S.C. § 2511*

58.    Defendants violated 18 U.S.C. 2511 when they conspired to and did (in order to aid the conspiracy) intentionally intercept, endeavor to intercept, or procure other people to intercept or endeavor to intercept, wire, oral, and electronic communications of Courser.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

59.     Defendants violated 18 U.S.C. 2511 when they conspired to and did (in order to aid the conspiracy) intentionally use, endeavor to use, or procure other people to use or endeavor to use an electronic, mechanical or other device to intercept oral communications of Courser.

60.     Defendants violated 18 U.S.C. 2511 when they conspired to and did (in order to aid the conspiracy) know or have reason to know that the recording devices (or any component) had been sent through the mail or transported in interstate or foreign commerce.

61.     Defendants violated 18 U.S.C. 2511 because (a) their actions to record and/or transmit conversations of Courser took place on the premises of a business or commercial establishment the operation of which affects interstate or foreign commerce or (b) their actions to record and/or transmit conversations of Courser where obtained for the purposes of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce.

62.     Defendants violated 18 U.S.C. 2511 when they intentionally disclosed or endeavored to disclose to other people the contents of the wire, oral, or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of 18 U.S.C. § 2511.

63.     Defendants violated 18 U.S.C. 2511 when they intentionally used or endeavored to use the contents of the wire, oral, or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of 18 U.S.C. § 2511.

64.     Defendants violated 18 U.S.C. 2511 when they intentionally disclosed or endeavored to disclose the contents of the wire, oral, or electronic communications intercepted by authorized means but knowing or having reason to know that the information was obtained

13

through the interception of such a communication in connection with a criminal investigation, having obtained or received the information in connection with a criminal investigation, and with intent to improperly obstruct, impede, or interfere with a criminal investigation.

### MAIL AND WIRE FRAUD – 18 U.S.C. §§ 1341, 1343

65.     Defendants committed mail fraud when they sent any correspondence, documents, recordings, or funds, throughout the commission of their fraudulent scheme, through the U.S Mail or through other wired communications, such as telephones, emails, and text messages.

66.     These actions and statements sent by U.S. Mail or by telephones, emails, and text messages were not only false, but misleading in such ways as to the Defendants' illegal benefit and to Courser's detriment.

67.     Further, the Defendants' correspondence, to include recorded conversations, is fraudulent and part of a greater scheme to defraud Courser because of the Defendants unethical desire for unilateral benefit.

68.     Thus, by sending correspondence, recordings, emails, and text message to through the U.S. Mail and wires, Defendants intended to mislead, defraud and extort Courser and citizens of the world into believing the truth of their correspondence and documents in order to mislead, defraud, and extort Courser.

69.     The aforementioned records, emails, and text messages were false, fraudulent, and misleading. They were sent in an attempt to conceal the on-going RICO enterprise and was part of a greater "scheme or artifice to defraud" Courser out of his rights to his office, property, business, and livelihood.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

70. The recordings, emails, and text messages were transmitted over the wires electronically via electronic mail and facsimile.

71. Defendants knowingly transmitted their lies through the U.S. Mail and electronically via electronic mail and facsimile.

72. Defendants' correspondence and documents were and are false, fraudulent, and misleading.

73. Defendants utilized the mail and wires to perpetuate their misdeeds.

74. Upon information and belief, Defendants engaged in other acts in furtherance of the schemes that involved use of interstate wire and the U.S. Mail, as identified in this Complaint

### *VIOLATIONS OF 42 U.S.C. § 1983 AND*

75. Defendants, through the conspiracy, engaged in actions that violated COURSER's civil rights under 42 U.S.C. § 1983 and 1985, as described in this Complaint.

### *VIOLATIONS OF MCL § 445.61, ET SEQ (INCLUDING MCL § 445.65, 445.67, 445.67A, 445.69, 445.71)*

76. Defendants, through the conspiracy, engaged in actions in violation of Michigan's Identity Theft Protection Act as described in this Complaint.

### *VIOLATIONS OF MCL § 752.791, ET SEQ*

77. Defendants, through the conspiracy, engaged in actions in violation of Michigan's Fraudulent Access to Computers, Computer Systems, and Computer Networks Act as described in this Complaint.

### *VIOLATIONS OF COMMON LAW INVASION OF PRIVACY*

78. Defendants, through the conspiracy, engaged in actions in violation of Michigan's common-law tort of invasion of privacy as described in this Complaint.

15

_VIOLATIONS OF MCL § 750.213; EXTORTION AND BLACKMAIL_

79.     Defendants, through the conspiracy, engaged in actions of extortion and blackmail, in violation MCL 750.213 as described in this Complaint.

_INJURY_

80.     Courser is a person who sustaining injuries to his business, property, and livelihood by reasons of the Defendants' violation of RICO and Defendants' commission of the predicate acts.

81.     Courser has been harmed because, as a result of Defendants' actions, he has, to this day been deprived of business, property, and livelihood.

82.     Courser has been harmed because he has been forced to incur substantial attorneys' fees in order to enforce his rights in the face of Defendants' predicate actions.

83.     Courser has been harmed because he was forcibly removed and constructively expelled from office as a result of Defendants' predicate actions, causing him hardship, embarrassment, and loss of income and livelihood.

84.     Courser has been harmed because he has suffered mental and emotional distress and attorneys' fees caused by Defendants actions against them.

85.     As a direct and proximate cause of the violations described in this Complaint, Courser has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, legal expenses, and loss of earning capacity. Courser is entitled to compensatory, exemplary, and punitive damages.

## COUNT 2
## CONSPIRACY TO VIOLATE RICO; 18 U.S.C. § 1962(d)

86.     Courser restates and incorporates the preceding paragraphs as though set forth fully herein.

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 321-5164 (Fax)

87.   Section 1962(d) makes it unlawful to conspire to violate subsections (a), (b) or (c) of Section 1962. 18 U.S.C. § 1962(d).

88.   Each Defendant was a co-conspirator that knowingly joined the conspiracy and involved him or her, directly or indirectly, in the commission of at least two predicate offenses, including but not limited to the predicates of extortion, mail fraud and wire fraud, as alleged herein.

89.   Defendants were each aware of their role as co-conspirators because they have been engaged in a quid-pro-quo relationship with the other Defendants.

90.   Defendants knowingly and willingly involved themselves in a greater scheme to defraud, and commit the predicate acts alleged above, when they conspired to create a mutually beneficial business relationship whereby they attempted to deprive Courser of his businesses, property, profits, livelihood, and value.

91.   Defendants also knowingly and willingly committed the predicate acts of fraud, mail and wire fraud, illegal wiretapping and eavesdropping, extortion, blackmail, and other crimes and violations as described in this Complaint. Defendants also engaged in monetary transactions derived from unlawful activity of their conspiracy.

92.   Defendants were each aware of their role as co-conspirators.

93.   Defendants knowingly participated in a greater scheme to defraud, and commit the predicate acts alleged herein.

94.   As a result of their conspiracy, the predicate acts and greater scheme to defraud, Courser was harmed.

95.   As a direct and proximate cause of the violations described in this Complaint, Courser has suffered and continues to suffer from, including but not limited to, severe and

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

permanent emotional distress, embarrassment, legal expenses, and loss of earning capacity. Courser is entitled to compensatory, exemplary, and punitive damages.

## COUNT 3
## VIOLATION OF FEDERAL WIRETAPPING ACT AND MICHIGAN'S EAVESDROPPING STATUTE

96.     Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

97.     Throughout the aforementioned time frame, Defendants and other non-named parties, acting as co-conspirators, had been spying on Courser.

98.     Upon information and belief, Defendants were working with Joe Gamrat and David Horr and other unidentified co-conspirators to conduct surveillance activities, record conversations, and send extortive text messages to Courser.

99.     Among other things, Defendants and/or their agents at their direction, unlawfully placed (or allowed to be placed) listening devices, tracking devices, and engaged in other inappropriate and illegal surveillance activities.

100.    After obtaining private information from surveillance and listening devices, Defendants used that information to directly blackmail, extort, and threaten Courser or advance a conspiracy to blackmail, extort, and threaten Courser.

101.    Upon information and belief, Defendants spoke regularly with Joe Gamrat, David Horr, and other co-conspirators before, during, and after the surveillance and blackmail was occurring.

102.    Defendants violated MCL 750.540 when they, in conjunction with others and in order to aid the conspiracy described herein, willfully and maliciously tapped or otherwise made an unauthorized connection to an electronic medium of communication of Courser; or allowed others to do so.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)

103.    Defendants violated MCL 750.539c when they, in conjunction with others and in order to aid the conspiracy described herein, willfully used a device to eavesdrop upon the conversations of Courser without the consent of all parties to the conversation; or allowed others to do so.

104.    Defendants at one time or another, knowingly aided, requested, or employed others to eavesdrop on the conversations of Courser without the consent of all parties to the conversation; or allowed others to do so.

105.    Defendants violated 18 U.S.C. § 2511 when they intentionally intercepted, endeavored to intercept, or procured other people to intercept or endeavor to intercept, wire, oral, and electronic communication of Courser; or allowed others to do so.

106.    Defendants further violated 18 U.S.C. § 2511, when they intentionally used, endeavored to use, or procured other people to use or endeavor to use an electronic, mechanical, or other device to intercept oral communications of Courser and did so when they placed recording devices (or authorized the placement of recording devices) in Courser's hotel rooms and then transmitted those communications through a wire, cable, or other connection.

107.    Defendants violated 18 U.S.C. § 2511, because they knew or had reason to know that the recording devices (or any component) had been sent through the mail or transported in interstate or foreign commerce.

108.    Defendants also violated 18 U.S.C. § 2511, because (a) their actions to record and/or transmit conversations of Courser took place on the premises of a business or commercial establishment the operation of which affects interstate or foreign commerce or (b) their actions to record and/or transmit conversations of Courser where obtained for the purposes of obtaining

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce.

109.    Defendants violated MCL 750.539d when they installed listening devices in a private place without the consent of Courser (and others) who were entitled to privacy in order to observe, record, transmit, or eavesdrop upon the sounds events in that place.

110.    Defendants violated MCL 750.539d when they distributed and disseminated or transmitted for access a recording they knew to be obtained in violation of such section, or allowed such activity on their business premises.

111.    Defendants violated MCL 750.539d when they distributed and disseminated or transmitted for access the same recordings they knew to be obtained in violation of such section, or allowed such activity on their business premises.

112.    Defendants violated MCL 750.539e when they used or divulged information they knew or reasonably should have known was obtained in violation of MCL 750.539b, 539c, or 539d, or allowed such activity on their business premises. Defendants further violated 18 U.S.C. § 2511, when they intentionally disclosed or endeavored to disclose to other people the contents of the wire, oral, or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of 18 U.S.C. § 2511, or allowed such activity on their business premises.

113.    At all relevant times, the Defendants listed herein acted maliciously, recklessly, intentionally, or by reason of gross negligence or violation of the law and are therefore liable to Courser.

114.    As a direct and proximate cause of the violations described in this Complaint, Courser has suffered and continues to suffer from, including but not limited to, severe and

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

permanent emotional distress, embarrassment, legal expenses, and loss of earning capacity. Courser is entitled to compensatory, exemplary, and punitive damages.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

## COUNT 4
## CIVIL STALKING UNDER MCL 600.2954

115.    Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

116.    Defendants' actions as described above were prohibited by MCL 750.411h and constituted stalking as defined by Michigan law.

117.    Specifically, Defendants' actions were willful and directed toward Courser.

118.    Defendants' course of conduct involved repeated and continuous harassment directed toward Courser, including, among other things, coordinating surveillance, following Courser, reporting her whereabouts, and sending extortion texts-that caused her emotional distress and mental anguish,

119.    Defendants' repeated and continuous harassment of Courser would cause a reasonable person to feel terrorized, threatened, frightened, intimidated, harassed, and molested.

120.    Defendants' conduct has actually made Courser feel terrorized, threatened, frightened, intimidated, harassed, and molested.

121.    Courser was the targeted victim of Defendants' continued harassment.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

122.    Courser did not consent to any of the actions described above.

123.    As a direct and proximate result of Defendants' stalking, Courser has suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and the loss of her employment.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

## COUNT 5
## INVASION OF PRIVACY and INTRUSION UPON SECLUSION

124.    Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

125.    Courser has a privacy interest in his personal life and business relationships.

126.    Defendants' wiretapping and surveillance constituted an unwarranted intrusion upon Courser's seclusion or solitude, or into his private affairs.

127.    The intrusions by Defendants were and are objectionable and offensive to a reasonable person, including Courser. The disclosure of the information would be highly offensive to a reasonable person.

128.    "Michigan has long recognized the common-law tort of invasion of privacy." *Lewis v. LeGrow*, 258 Mich.App 175, 193; 670 NW2d 675 (2003).

129.    Defendants' subsequent publication of the misleading and defamatory information constituted a public disclosure of false allegations that are now embarrassing to Courser.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)

130.    Defendants' subsequent publication of the misleading and defamatory information constituted publicity which place Courser in a false light in the public eye.

131.    Defendants' publication of the misleading and defamatory articles constituted an invasion into Courser's private matters.

132.    Courser has a right to keep his relationships private.

133.    The Defendants have obtained private information through a method objectionable to a reasonable person; to wit, by violating Michigan's wiretapping and eavesdropping statutes and engaging in a plot to send extortive texts to Courser demanding that he resign his elected office.

134.    At all relevant times, Defendants acted maliciously, recklessly, intentionally, or by reason of gross negligence or violation of the law and are therefore liable to Courser.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

## <u>COUNT 6</u>
## <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS</u>

135.    Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

136.    Defendants were aware that they were publishing the misleading and defamatory articles.

137.    Courser has valid business relationship or expectancy with his clients.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

138.    Defendants knew that Courser has contractual or business relationship with his clients. In fact, Defendants published information knowing it would reach Courser's clients.

139.    Defendants knew that the misleading and defamatory information could cause Courser's relationships to believe that Courser was a criminal.

140.    Defendants' act of publishing the misleading and defamatory information was an intentional interference by Defendants inducing or causing a breach of termination of the relationship or expectancy.

141.    Defendants' act of publishing the misleading and defamatory information is a per se wrongful act or the doing of a lawful act with malice or unjustified in law for the purpose of invading the contractual rights or business relationship of Courser.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of not less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

## COUNT 7
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

142.    Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

143.    The Defendants' conduct of wiretapping and surveillance was widely regarded as extreme and outrageous conduct.

144.    The Defendants' acts of wiretapping and surveillance was intentional and were done with reckless disregard to the harm that might be cause in Courser.

24

145.    As the result of wiretapping and surveillance and then publishing information, Courser has suffered severe emotional distress.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

### COUNT 8
### NEGLIGENCE and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

146.    Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

147.    The Defendants conducted wiretapping and surveillance and distributed misleading and false information in order to cause damage to Courser.

148.    Such conduct involves an unreasonable risk of harm.

149.    Such conduct violates the general duty to conform to the legal standard of reasonable conduct in the light of the apparent risk.

150.    Such conduct would foreseeably result in emotional harm and injury to Courser.

151.    Wiretapping and surveillance and distribution of misleading and false information has caused and continues to cause Courser great emotional distress and embarrassment.

152.    Defendants had a duty to exercise reasonable and ordinary care and caution in and about their conduct.

153.    Defendants were negligent in their acts and/or omissions by, amongst other things, engaging in wiretapping and surveillance and distribution of misleading and false

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

information based on false and unverified information, including a series of altered recording that were obtained in violation of the Michigan wiretapping and eavesdropping statutes.

154.  At all relevant times, Defendants acted maliciously, recklessly, intentionally, or by reason of gross negligence or violation of the law and are therefore liable to Courser.

155.  As a direct and proximate cause of the conduct of Defendants as described in this Complaint, Courser has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, legal expenses, and loss of earning capacity. Courser is entitled to compensatory, exemplary, and punitive damages.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

**COUNT 9**
**CONSPIRACY and CONCERT OF ACTIONS**

156.  Courser restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

157.  Defendants acted tortiously.

158.  Defendants acted pursuant to a common design.

159.  At all relevant times, Defendants engaged in concerted activities described in the preceding paragraphs by express or implied agreement.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

160.    This concerted action was intended to, among other things, in order to defame Courser, embarrass Courser, cast Courser in a false and misleading light, and cause Courser harm and damages as described in this Complaint.

161.    Courser is not able to identify all of the activities of Defendants due to the generic similarity of such activities engaged in and promoted by Defendants and/or an agent thereof; but has provided details herein of the many activities engaged in and promoted by Defendants.

162.    As a direct and proximate result of Defendants' concerted activities, Courser has sustained, and will continue to sustain, severe injuries and damages.

163.    Due to the concert of action among Defendants and/or an agent thereof, each is liable to Courser for these injuries and damages even if there was no directed relation to the aforementioned activities conducted by any one particular person, party, or agent thereof.

164.    Defendants are jointly, severally, and/or alternatively liable to Courser for all of their injuries and damages.

165.    Courser is entitled to exemplary and punitive damages.

166.    As a direct and proximate cause of the violations described in this Complaint, Courser has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, legal expenses, and loss of earning capacity. Courser is entitled to compensatory, exemplary, and punitive damages.

WHEREFORE, As a result of Defendants' actions and conduct, Courser has suffered damages in an amount of no less than $75,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

<div style="margin-left: 40%">

Respectfully submitted

DePERNO LAW OFFICE, PLLC

*/s/ Matthew S. DePerno*
Attorney for Plaintiff Todd Courser
951 W. Milham Avenue
PO Box 1596
Portage, MI 49081
(269) 321-5064

</div>

Dated: November 2, 2018

## <u>VERIFICATION</u>

I, TODD COURSER, being first duly sworn, deposes and says that I am the plaintiff in the above-entitled cause. I am familiar with the facts at issue in this case. I have read the foregoing Complaint and know its content, that to the best of my knowledge, information and belief, the contents thereof are true.


DATED: November 2, 2018                    */s/ Todd Courser*_____
                                                                 Todd Courser

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (Fax)

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his attorney DePERNO LAW OFFICE, PLLC, hereby demands a trial by jury in the above entitled matter as to all issues and claims for which a jury trial is allowed.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: November 2, 2018

/s/ *Matthew S. DePerno*
Attorney for Plaintiff Todd Courser
951 W. Milham Avenue
PO Box 1596
Portage, MI 49081
(269) 321-5064

30

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)