UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

           Plaintiff,

v

RADISSON HOTELS INTERNATIONAL, INC.,
a Delaware corporation, RADISSON GROUP, INC.,
a Minnesota corporation, CARLSON REZIDOR
HOTEL GROUP, an international partnership,
BLOCK 100 LIMITED PARTNERSHIP, a
Michigan limited partnership, and WINEGARDNER
& HAMMONS, INC., an Ohio corporation, and
WINEGARDNER & HAMMONS HOTEL GROUP,
LLC, a Delaware limited liability company.

           Defendants.

Case No. 1:18-cv-01232
Hon. Gordon J. Quist
Mag. Phillip J. Green

| | |
|---|---|
| MATTHEW S. DePERNO (P52622) | DAVID B. TIMMIS (P40539) |
| DePERNO LAW OFFICE, PLLC | DAVID Q. HOUBECK (P77002) |
| Attorney for Plaintiff | VANDEVEER GARZIA, P.C. |
| 951 W. Milham Ave. | Attorneys for Defendants Radisson |
| P.O. Box 1595 | Hotels International Inc., Radisson Group, Inc., |
| Portage, MI 49081 | Carlson Rezidor Hotel Group, Block 100 |
| (269) 321-5064 | Limited Partnership, Winegardner & |
| | Hammons, Inc. and Winegardner & Hammons |
| | Hotel Group LLC |
| | 840 West Long Lake Road, Suite 600 |
| | Troy, MI 48098 |
| | (248) 312-2800/(248) 879-0042 (fax) |
| | dtimmis@vgpclaw.com |
| | dhoubeck@vgpclaw.com |

**DEFENDANT BLOCK 100 LIMITED PARTNERSHIP'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

     NOW COMES Defendant, BLOCK 100 LIMTIED PARTNERSHIP (herein "Block 100"),

by and through its attorneys, VANDEVEER GARZIA, P.C., and for its Motion for Summary

Judgment pursuant to Fed. R. Civ. P. 56, state as follows:

## INTRODUCTION

As this Honorable Court is well aware, the present matter is the fifth edition of Plaintiff's

campaign to blame anyone and everyone except himself for his *voluntary* resignation from the

Michigan House of Representatives after an extensive investigation determined that Plaintiff, a

licensed Michigan attorney, had engaged in illegal[1], unethical[2] and fraudulent[3] conduct in a frantic,

self-serving effort to conceal his extra-marital affair with a colleague.  In affirming this Court's

dismissal of all defendants in a similar matter filed by this Plaintiff, the Sixth Circuit has aptly

described Plaintiff's campaign of misplaced blame as follows:

> Todd Courser was a member of the Michigan House of Representatives.  His affair with fellow-representative Cindy Gamrat and his related misconduct lost him that office.  Courser, however, does not see himself as the source of his misfortunes and instead alleges that [insert Defendant *du jour*] conspired to remove him from office…The *Detroit News* coverage prompted the Michigan House of Representatives to issue a report and hold a hearing on the allegations.  Courser resigned before he could be expelled.
>
> This case is one of several that Courser and Gamrat have filed against various persons that they believe conspired against them to end their political careers.  For the reasons that follow, we AFFIRM the district court's judgment of dismissal of all claims against all Defendants.

*Courser v. Allard*, 969 F.3d 604, 612-613 (2020).

Plaintiff's Complaint in the present matter was filed four days prior to Plaintiff's Complaint

in the *Courser v. Allard* matter and contains nearly identical factual allegations and claims.  This

Court has already dedicated significant time and resources in dismissing Plaintiff's claims in their

---

[1] Plaintiff was sentenced to 12 months of probation and 45 days in jail (deferred) along with a fine of $1,125 after pleading "no contest" to willful neglect of duty by a public officer for his conduct related to this matter.  (**Ex. A**, *The Oakland Press*, Sept. 16, 2019, https://www.theoaklandpress.com/news/state/todd-courser-sentenced-to-12-months-of-probation-can-avoid-jail/article_1836e5f4-d93a-11e9-a144-9f87461a2b62.html, last accessed on June 17, 2021).
[2] *The Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat* (**Ex. B**, without exhibits) determined that the "evidence demonstrates numerous instances of deceptive, deceitful and outright dishonest conduct by both [Plaintiff and Cindy Gamrat]' and that it was "unethical and an abuse of the office of State Representative" for Plaintiff to request a subordinate staff member "to send a false communication [i.e. the "false flag" email] in addition to other "deceptive conduct" of Plaintiff and Cindy Gamrat.
[3] *Id.*

entirely in prior cases, including the *Courser v. Allard* matter.  This Court should address Plaintiff's allegations as it did in the predecessor cases and dismiss all of Plaintiff's claims, in their entirety.

As a threshold matter, Plaintiff's claim that Block 100 "conspired" with some nonparty "in an effort to remove Courser from office and to damage his livelihood," as alleged in Plaintiff's Complaint, is the height of absurdity.  (**Ex. C**, *Plaintiff's Complaint*, ¶ 47, PageID.10).  There is absolutely no evidence or plausible motive whatsoever for Block 100 to have (or had) any interest whatsoever in "remov[ing] Courser from office."  The Court's analysis could certainly end here, but additional evaluation further demonstrates the frivolity of Plaintiff's claims.  Plaintiff's claims against Block 100 are predicated on Plaintiff's theory that hotel "employees and staff" provided access to Plaintiff's hotel room and information which was used to blackmail and/or extort Plaintiff.  (**Ex. C**, *Plaintiff's Complaint*, ¶¶ 18-41, PageID.4-10).  As a matter of law, Block 100 is not liable for the criminal acts of its employees.

Seven of the nine counts set forth in Plaintiff's Complaint are time-barred by the applicable statutes of limitations (Counts 3-9).  With respect to the two, arguably, timely claims (Counts 1 and 2), which allege violations of RICO and conspiracy to violate RICO, this Court has previously determined on two occasions that Plaintiff is unable to satisfy the "continuity" requirement of his RICO claims because there is no "threat of future criminal conduct[,]" which is Plaintiff's burden to prove.  (See **Ex. D**, Opinion, ECF No. 67, *Courser v. Michigan House of Representatives*, case no. 1:18-cv-882, PageID.2800-2802).  As this Court and the Sixth Circuit have already determined, Plaintiff cannot maintain RICO or conspiracy to commit RICO claims because "Courser allege[d] a scheme that lasted no more than nine months and had but a single purpose and victim—to remove Courser from office.  The alleged scheme was complete once Courser resigned, as nothing else

remained to be done." *Courser v. Allard*, 969 F.3d 604, 621 (2020); see also **Ex. C**, *Plaintiff's Complaint*, ¶ 47, PageID.10 ("…Defendants…in an effort to remove Courser from office and to damage his livelihood…").  The same is true here and the Court should rule in a manner similar to its decision in the prior *Courser v. Allard, et al.,* case no. 1:18-cv-874, and *Courser v. Michigan House of Representatives, et al*., case no. 1:18-cv-882, matters.

Even if Plaintiff's claims were not untimely (which they are), and despite a protracted course of discovery in the present matter, Plaintiff has failed to support any of his allegations against Block 100 with a shred of admissible evidence.  This Court should, for a third time, summarily dismiss Plaintiff's self-serving, unsupported claims that anyone other than himself is responsible for his illegal, unethical and fraudulent conduct.

## <u>MOTION</u>

1.      This is one of several lawsuits filed by Plaintiff, Todd Courser, arising out of his resignation from the Michigan House of Representatives on or about September 11, 2015.

2.      In his Complaint, dated November 2, 2018, Plaintiff pleads nine counts against Defendants: (1) Violations of RICO; (2) Conspiracy to Violate RICO; (3) Violation of Federal Wiretapping Act and Michigan's Eavesdropping Statute; (4) Civil Stalking Under MCL 600.2954; (5) Invasion of Privacy and Intrusion Upon Seclusion; (6) Tortious Interference with Business Relationships; (7) Intentional Infliction of Emotional Distress; (8) Negligence and Negligent Infliction of Emotional Distress; and (9) Conspiracy and Concert of Actions. (**Ex. C**, *Plaintiff's Complaint*).

3.      Plaintiff stayed at the Radisson Hotel Lansing on various occasions between January and May 2015.  (**Ex. E**, Invoices).  Indeed, Plaintiff's Complaint states that Plaintiff was

a guest at the Radisson Hotel Lansing ("Hotel") in the early part of 2015. (**Ex. C**, *Plaintiff's Complaint*, ¶ 23).

4.      The last stay by Plaintiff at the Hotel was from May 19, 2015 to May 21, 2015. (**Ex. E**, Invoices, Bates #WIN000509).

5.      Plaintiff resigned from the House of Representatives on September 11, 2015.

6.      Plaintiff's Complaint in the present matter was not filed **until more than three years later**, on November 2, 2018. (See **Ex. C**, *Plaintiff's Complaint*).

7.      Count 3, Violation of Federal Wiretapping Act has a two-year statute of limitations "from the date upon which the claimant first ha[d] a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

8.      Count 3, Violation of Michigan's Eavesdropping Statute has a three-year statute of limitations from the date of alleged injury. MCL § 600.5805(2).

9.      Counts 4 through 9[4], all of which are based on Michigan tort claims, have three-year statutes of limitation. MCL § 600.5805(2); *Terlecki v. Stewart*, 278 Mich App 644, 653; 754 NW2d 899 (2008) ("[A]n allegation of conspiracy is 'superfluous' as far as determining the applicable statute of limitations. [Citation omitted]. It follows that the conspiracy claim takes on the limitations period for the underlying wrong that was the object of the conspiracy.").

10.     Although it is the position of Block 100 that there is no evidence whatsoever that any individual affiliated with the Hotel assisted and/or participated in any surveilling or recording of Plaintiff at the Hotel, the "discovery date" for purposes of the applicable statutes of limitations is May 21, 2015 (the last recorded date that Plaintiff stayed at the Hotel), as Plaintiff testified that

---

[4] Plaintiff's Count 9, "Conspiracy and Concert of Actions," includes a vague reference to alleged efforts to "defame" Plaintiff. (**Ex. C**, Plaintiff's Complaint, ¶ 160). A claim for defamation was not properly plead. Further, a claim for defamation would be time-barred by the one-year statute of limitations. MCL § 600.5805(11).

he was immediately aware that "someone" was allegedly surveilling or recording him during his stay at the Hotel.  (See **Ex. F**, Plaintiff's Dep Trans, pp 73:22 to 74:13; **Ex. E**, Invoices, Bates #WIN000509).

11.     It is the position of Block 100 that the applicable statutes of limitation began to run as of May 21, 2015, the last day on which Plaintiff stayed at the Hotel, at the latest, which renders Plaintiff's Counts 3 through 9, which have either two or three-year statute of limitations, untimely. Even in the event that this Court were to consider September 11, 2015, the date of Plaintiff's resignation from the House of Representatives, as the commencement date for purposes of the applicable statutes of limitation, Plaintiff's Counts 3 through 9 would still be untimely.

12.     In the unlikely event that this Court were to determine that Plaintiff's claims were timely, which they are not, Plaintiff's claims should also be dismissed because Plaintiff has failed support his claims with a shred of admissible evidence.

13.     To the contrary, Plaintiff's claims against Block 100 are based purely on speculation and conjecture.

14.     Plaintiff alleges that the Hotel staff granted and assisted unauthorized access to his rooms at the Hotel, allowed third parties to enter his hotel rooms to install surveillance equipment and conduct surveillance on Plaintiff, and provided access to Plaintiff's account and reservation information, among other things.  (**Ex. C**, *Plaintiff's Complaint*, ¶¶ 23-41).

15.     It is significant to note that despite a lengthy investigation by the Michigan State Police and Michigan House of Representatives, no audio or visual recording of Plaintiff at the Hotel was ever determined to exist.

16.     Plaintiff and a colleague, Ms. Cindy Gamrat (n/k/a Cindy Bauer) were both elected as State Representatives in the fall of 2014 and took office in January of 2015.  (See **Ex. D**,

Opinion, ECF No. 67, *Courser v. Michigan House of Representatives*, case no. 1:18-cv-882, PageID.2776).

17.    At some point, Plaintiff and Ms. Gamrat began an extramarital affair.  (*Id.*)

18.    As this Court is well aware:

The affair led to the now well-known "inoculate the herd" conversation between Courser and Graham in May of 2015 and Graham's recording of the conversation; Courser's subsequent false-flag-gay-sex email to his constituents; the August 7, 2015, Detroit News article reporting on the affair and Courser's and Gamrat's use of public funds to hide it; House investigations into the matter; and, eventually, Courser's resignation and Gamrat's expulsion.

(*Id*, at PageID.2774).

19.    In his Complaint, Plaintiff alleges that some *unknown, unidentified* member of hotel staff at the Radisson Hotel Lansing granted and assisted unauthorized access to his rooms at the Hotel, allowed third parties to enter his hotel rooms to install surveillance equipment and conduct surveillance on Plaintiff, and provided access to Plaintiff's account and reservation information, among other things.  (**Ex. C**, *Plaintiff's Complaint*, ¶¶ 23-41).

20.    Despite significant, in-depth investigations by the House of Representatives and the Michigan State Police into the circumstances surrounding Plaintiff's illegal, unethical and fraudulent conduct and Plaintiff's allegations, there is no credible, admissible evidence whatsoever that indicates that any representative of the Hotel engaged in any of the conduct alleged by Plaintiff.

21.    Indeed, none of the extensive investigations have identified a single representative of the Hotel (including Block 100) who was involved in any way with the conduct alleged by Plaintiff.

22.    Plaintiff's Complaint does not identify a single employee Block 100 who was allegedly involved in the conduct alleged.

23.     Further, Plaintiff was unable to identify a single employee of Block 100 who was allegedly involved in the conduct alleged during his deposition.  (**Ex. F**, Plaintiff's Dep Trans, p 200:3-5) (**"Well, I don't know which employees you had that were involved in it.  You would have to provide that information to us."**).

24.     Clearly, it is Plaintiff (not the Defendants) who has the burden to prove Plaintiff's allegations.  It also clear that Plaintiff has failed to do so and is unable to do so.

25.     Summary judgment is appropriate under Fed. R. Civ. P. 56 if the moving party demonstrates that there is no genuine issue of material fact on an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

26.     These Defendants are entitled to summary judgment as to Plaintiff's claims, as a matter of law, because Plaintiff's claims are time-barred.

27.     Even in the unlikely event that the Court were to determine that Plaintiff's claims were not time-barred, Block 100 would still be entitled to summary judgment as a matter of law because Plaintiff has failed to support his allegations with a shred of admissible evidence.

28.     Given the above, these Defendants are entitled to summary judgment of Plaintiff's claims in this matter pursuant to Fed. R. Civ. P. 56.

29.     Undersigned counsel has sought concurrence in the present Motion but Plaintiff has refused to voluntarily dismiss his claims against Block 100

WHEREFORE, Defendant, BLOCK 100 LIMITED PARTNERSHIP, respectfully request that this Honorable Court grant this motion and dismiss the Plaintiff's claims in this matter with prejudice pursuant to Fed. R. Civ. P. 56 for the reasons stated above and in the attached Brief.

VANDEVEER GARZIA, P.C.

By: /s/ David B. Timmis

**DAVID B. TIMMIS (P40539)**
**DAVID Q. HOUBECK (P77002)**
Attorney for Defendants Radisson
Hotels International Inc., Radisson Group, Inc.,
Carlson Rezidor Hotel Group, Block 100
Limited Partnership,
Winegardner & Hammons, Inc. and
Winegardner & Hammons Hotel Group
840 West Long Lake Road, Suite 600
Troy, MI 48098
(248) 312-2800/(248) 879-0042 (fax)
dtimmis@vgpclaw.com
dhoubeck@vgpclaw.com

Dated:  June 18, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

           Plaintiff,

v

RADISSON HOTELS INTERNATIONAL, INC.,
a Delaware corporation, RADISSON GROUP, INC.,
a Minnesota corporation, CARLSON REZIDOR
HOTEL GROUP, an international partnership,
BLOCK 100 LIMITED PARTNERSHIP, a
Michigan limited partnership, and WINEGARDNER
& HAMMONS, INC., an Ohio corporation, and
WINEGARDNER & HAMMONS HOTEL GROUP,
LLC, a Delaware limited liability company.

           Defendants.

Case No. 1:18-cv-01232
Hon. Gordon J. Quist
Mag. Phillip J. Green

_____/

| | |
|---|---|
| MATTHEW S. DePERNO (P52622) | DAVID B. TIMMIS (P40539) |
| DePERNO LAW OFFICE, PLLC | DAVID Q. HOUBECK (P77002) |
| Attorney for Plaintiff | VANDEVEER GARZIA, P.C. |
| 951 W. Milham Ave. | Attorneys for Defendants Radisson |
| P.O. Box 1595 | Hotels International Inc., Radisson Group, Inc., |
| Portage, MI 49081 | Carlson Rezidor Hotel Group, Block 100 |
| (269) 321-5064 | Limited Partnership, Winegardner & |
| | Hammons, Inc. and Winegardner & Hammons |
| | Hotel Group LLC |
| | 840 West Long Lake Road, Suite 600 |
| | Troy, MI 48098 |
| | (248) 312-2800/(248) 879-0042 (fax) |
| | dtimmis@vgpclaw.com |
| | dhoubeck@vgpclaw.com |

_____/

**BRIEF IN SUPPORT OF DEFENDANT BLOCK 100 LIMITED PARTNERSHIP'S
HOTEL GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT**

i

## <u>TABLE OF CONTENTS</u>

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...................................................... ii

STATEMENT OF ISSUES PRESENTED...........................................................................................v

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF FACTS ................................................................................................1

III.  STANDARD OF REVIEW ..............................................................................................3

III.  LAW AND ARGUMENT ................................................................................................4

      A.    Plaintiff's Claims Under 18 U.S.C. § 1962, Must Be Dismissed as Plaintiff Has
          Failed to Properly Plead the Necessary Elements of These Claims and Discovery
          has Confirmed that Plaintiff Does Not Have a Shred of Admissible Evidence to
          Support his RICO claims.........................................................................................4

      B.    Plaintiff's Wiretapping Claims Under 18 U.S.C. § 2511 and MCL § 750.540 Must Be
          Dismissed as They Are Time-Barred. ....................................................................8

     C.  Plaintiff's State Law, Tort-Based Claims for Civil Stalking (Count 4), Invasion of
        Privacy and Intrusion Upon Seclusion (Count 5), Tortious Interference with
        Business Relationships (Count 6), Intentional Infliction of Emotional Distress
        (Count 7), Negligence and Negligent Infliction of Emotional Distress (Count 8),
        and Conspiracy and Concert of Actions (Count 9) Must Be Dismissed as the
        Claims are Time-Barred and Plaintiff Cannot Establish that any representative of
        Block 100 Engaged in the Conduct Alleged  ...............................................................10

IV. CONCLUSION...............................................................................................................16

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Aces High Coal Sales, Inc.*, 768 F. App'x 446, 456-57 (6th Cir. 2019) ……………..………… 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ………………………………… 4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) …………………………………… 4

*Berent v. Kemper Corp.*, 780 F.Supp. 431, 447-448 (E.D. Mich. 1991) ………………………... 5

*BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan (On Remand)*, 217 Mich.App. 687, 698-599, 552 NW2d 919 (1996) ……………………………………..…..…… 12-13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ……………………………………………….. 4

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ……….. 4

*Courser v. Allard*, 969 F.3d 604, 621 (2020) …………………………………………...… 6-7, 11-12

*Dalley v. Dykema Gossett, PLLC*, 287 Mich. App. 296, 323, 788 NW2d 679 (2010) ………… 12

*Duran v The Detroit News*, 200 Mich App 622, 629; 504 NW2d 715 (1993) ………………….. 15

*Franklin Global Res. v. Lee*, 2016 U.S. Dist. LEXIS 193279 (S.D. Tex. Aug. 12, 2016) ……… 8

*Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016) ………………………. 8

*Henry v. Dow Chem. Co.*, 473 Mich. 63, 79, n.9 (2005) ………………………………………….. 14

*Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 661; 822 NW2d 190 (2012) …………………….. 14

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ….. 6

*In re Consumers Power Co. Sec. Litigation,* 105 F.R.D. 583, 592-593 (E.D. Mich. 1985) …..... 5-6

*In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F.Supp.2d 287, 315 (S.D. Ohio 2007) ………... 6

*United States SEC v. Blackwell*, 291 F.Supp.2d 673, 686 (C.D. Ohio 2003) ……………………. 7

*Johnson v. Wayne County*, 213 Mich. App. 143, 161, 540 NW2d 66 (1995) …………………... 13

*Lewis v. LeGrow*, 258 Mich. App. 175, 193, 670 NW2d 675 (2003) …………………………….. 11

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) ……………………………………………….. 3

*Moore v. City of Detroit*, 252 Mich. App. 384, 389, 652 NW2d 688 (2002) …………………… 13

*Scott v. Harris*, 550 U.S. 372, 380 (2007) …………………………………………… 4

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) …. 6

*Terlecki v. Stewart*, 278 Mich App 644, 653; 754 NW2d 899 (2008) ………………………….. 10

*Urbain v. Beierling*, 301 Mich. App. 114, 131-132, 835 NW2d 455 (2013) …………………… 15

*United States SEC v. Blackwell*, 291 F.Supp.2d 673, 686 (C.D. Ohio 2003) …………………… 6

*Wargelin v Mercy Health Corp*, 149 Mich App 75, 81; 385 NW2d 732 (1986) ……………….. 14

*Williams v. Ford Motor Co.*, 187 F.3d 533, 546 (6th Cir. 1999) ……………………………... 4

**Statutes**

18 U.S.C. § 1962 ……………………………………..………………………………… 5

18 U.S.C. § 2511 …………………………………………………………….…….. 8

18 U.S.C. § 2520(e) ………………………………………………………………….8

MCL § 600.2954 …………………………………………………………………... 10

MCL § 600.5805(2) ……………………………………………………………. 7-10

MCL § 750.540 …………………………………………………………………… 9

**Court Rules**

Fed. R. Civ. P. 9(b) ………………………………..………………………………... 5

Fed. R. Civ. P. 56 ………………………………………………………………….... 3-4

Fed. R. Civ. P. 56(c) ……………………………………………………………… 4

Fed. R. Evid. 801(c) ……………………………………..………………………… 8

Fed. R. Evid. 802 …………………………………………………………………… 7

Fed. R. Evid. 901 …………………………………………..………………………… 7

Fed. R. Evid. 901(a) ……………………………………………………………….... 7

## STATEMENT OF ISSUES PRESENTED

I.      Should Plaintiff's RICO claims under 18 U.S.C. § 1962 be dismissed as Plaintiff has failed to properly plead the necessary elements of these claims and discovery has confirmed that Plaintiff does not have any admissible evidence to support his RICO claims?

This Defendant says: Yes.

II.     Should Plaintiff's Wiretapping Claims under 18 U.S.C. § 2511 and MCL § 750.540 be dismissed as they are time-barred?

This Defendants says:  Yes.

III.    Should Plaintiff's state law, tort-based claims for Civil Stalking (Count 4), Invasion of Privacy and Intrusion Upon Seclusion (Count 5), Tortious Interference with Business Relationships (Count 6), Intentional Infliction of Emotional Distress (Count 7), Negligence and Negligent Infliction of Emotional Distress (Count 8), and Conspiracy and Concert of Actions (Count 9) be dismissed as the claims are time-barred and Plaintiff cannot establish that any representative of Block 100 engaged in the conduct alleged?

This Defendant says:  Yes.

## I.   <u>INTRODUCTION</u>

As this Court is well aware, this is one of numerous lawsuits Plaintiff has filed in order to shift blame to others for the consequences of his own actions.  Plaintiff, elected as State Representative in November of 2014, admittedly engaged in an extramarital affair with a fellow Representative.  When that State Representative's husband became suspicious of the affair, Plaintiff engaged in an illegal, unethical and fraudulent cover-up scheme designed to create doubt or disbelief regarding the affair, which involved the sending of a "false flag" e-mail accusing himself of drug use and sexually deviant behavior.  Plaintiff's scheme of fraud and deceit was ultimately brought to light by a reporter from *The Detroit News*.  Ultimately, the Michigan House of Representatives conducted an investigation and found that Plaintiff had used House resources in an effort to cover up the affair, among other illegal, unethical and fraudulent behavior.  An action to expel Plaintiff from the House of Representatives ultimately ended with Plaintiff resigning his position before being expelled.  In the instant lawsuit, Plaintiff alleges that various corporate entities associated with the Radisson Hotel Lansing, were conspirators in a scheme to oust Plaintiff from the House of Representatives.  Plaintiff's claims are outrageous, unsupported and untrue, and, as occurred in other cases, the present matter must be dismissed.

## II.   <u>STATEMENT OF FACTS</u>

According to Mr. Joseph Gamrat, during his wife's legislative duties, he assumed the responsibility for paying the bills in his house.  (**Ex. G**, Joseph Gamrat Dep Trans, *Gamrat v. Cline*, *et al*., case no. 1:16-cv-1094, p 30:2-6).  Already suspicious that his wife was having an affair, Mr. Gamrat became more so when he saw an exorbitantly large charge on his joint debit card with his wife from the Lansing Radisson.  (**Ex. G**, p 30:17-22).  Because the charge was much larger than normally would be expected for a two-night stay, Mr. Gamrat contacted the hotel to

determine the origin of the charges on his account.  (**Ex. G**, pp 30:23 to 31:21).  Because he was able to provide the hotel with his credit card number, Mr. Gamrat testified that the hotel provided him with details regarding the charge, including the fact that **his (joint) debit card** had been used to secure two separate rooms, under Todd Courser's name. (**Ex. G**, pp. 30-31).

Mr. Gamrat provided sworn testimony that he never paid any hotel representative for information:

> **Q.    Did you ever pay _anybody_ at the Radisson to give you information?**
>
> **A.    No.**

(**Ex. G**, p 38:21-23) (emphasis added).

On one occasion, Mr. Gamrat claims to have surreptitiously (i.e. without the knowledge or assistance of hotel staff) accessed a hotel room, while it was being cleaned by housekeeping, which he believed to be occupied by his wife and/or Plaintiff.  (**Ex. G**, p 38).  Mr. Gamrat testified that all of his actions were in an effort to "try[] to figure out if my wife was having an affair."  (**Ex. G**, p 45:2).

It has been well-established what occurred after Plaintiff became worried that his affair with Ms. Gamrat would become publicly known.  "The affair led to the now well-known 'inoculate the herd' conversation between Courser and Mr. Ben Graham in May of 2015 and Graham's recording of the conversation; Courser's subsequent false-flag-gay-sex email to his constituents; the August 7, 2015, Detroit News article reporting on the affair and Courser's and Gamrat's use of public funds to hide it; House investigations into the matter; and, eventually, Courser's resignation and Gamrat's expulsion."  (**Ex. D**, Opinion, ECF No. 67, _Courser v. Michigan House of Representatives_, case no. 1:18-cv-882, PageID.2774).

It is also well-established that after Plaintiff's voluntary resignation from the House, Plaintiff filed numerous lawsuits alleging the existence of a conspiracy to remove him from office. Plaintiff has sued the Michigan House of Representatives, various members of the House of Representatives, the Michigan State Police, *The Detroit News*, Chad Livengood, Joseph Gamrat, Keith Allard, Ben Graham, and Joshua Cline, as well as the Defendants in the present matter, alleging that they are responsible for the fact that he voluntarily resigned from the House of Representatives after his illegal, unethical and fraudulent conduct was uncovered.  Despite years and years of protracted litigation, Plaintiff has failed to support any of his outlandish allegations with a shred of admissible evidence.

The Lansing Radisson Hotel is owned and operated by Defendant Block 100 Partnership ("Block 100") pursuant to written license agreement between Block 100 as the licensee and Defendant Radisson Hotels International, Inc. ("Radisson") as the licensor.  (**Ex. H**, License Agreement).  Under the License Agreement, Block 100 is permitted to display the Radisson™ trade names, trademarks, and service marks in connection with its operation of the independently owned and operated hotel.  At the times alleged in the Plaintiff's Complaint, Defendant Winegardner & Hammons, Inc.("WHI") provided management services for the hotel to Block 100 pursuant to a management agreement.  (**Ex. I**, Management Agreement).

## III.   <u>STANDARD OF REVIEW</u>

Defendant Block 100 brings this motion under Fed. R. Civ. P. 56.  Summary judgment is appropriate under Fed. R. Civ. P. 56 if the moving party demonstrates that there is no genuine issue of material fact on an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court held,

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding that plaintiff's version of events flatly contradicted by videotape of arrest).  If the non-moving party's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). The non-moving party will not survive summary judgment if it provides evidence that is "conclusory and factually unsupported or legally incorrect."  *Williams v. Ford Motor Co.*, 187 F.3d 533, 546 (6th Cir. 1999).

## IV.   LAW AND ARGUMENT

### A.   Plaintiff's Claims Under 18 U.S.C. § 1962, Must Be Dismissed as Plaintiff Has Failed to Properly Plead the Necessary Elements of These Claims and Discovery has Confirmed that Plaintiff Does Not Have a Shred of Admissible Evidence to Support his RICO claims.

Counts I and II of Plaintiff's Complaint allege violations of the Racketeer Influenced Corrupt Organizations Act (RICO) and conspiracy to violate RICO.  As this Court has already addressed in the *Courser v. Allard* and *Courser v. House of Representatives* matters, Plaintiff is unable to satisfy the "continuity" requirement of his RICO claims because there is no "threat of future criminal conduct."  (See **Ex. D**, Opinion, ECF No. 67, *Courser v. Michigan House of Representatives*, case no. 1:18-cv-882, PageID.2800-2802).  Further, Plaintiff has failed to plead his RICO claims against Block 100 with the requisite particularity.  For these reasons, which will be addressed in reverse order, Block 100 is entitled to summary judgment of Plaintiff's RICO claims (Counts 1 and 2), as a matter of law.

### 1.      Plaintiff has failed to plead his RICO claims with particularity.

Plaintiff vaguely alleges that "some Defendants started a scheme to violate federal and state laws and then spy on Courser in order to 'dig up dirt on him[.]'"  (**Ex. C**, *Plaintiff's Complaint*, ¶ 50).   According to Plaintiff, the scheme involved "illegal wiretapping and eavesdropping" and "purchasing favors and information from The Radisson Defendants." (**Ex. C**, *Plaintiff's Complaint*, ¶ 50).  Plaintiff alleges that the Defendants engaged in wire fraud and mail fraud as the predicate RICO acts. (**Ex. C**, *Plaintiff's Complaint*, ¶¶ 65-74).

When a RICO violation is predicated on allegations of fraud, the plaintiff must also comply with the heightened particularity requirements of Fed. R. Civ. P. 9(b) with respect to the elements of fraud.  *Berent v. Kemper Corp.*, 780 F.Supp. 431, 447-448 (E.D. Mich. 1991).  This requires setting forth factual allegations of the time, place, subject matter, and precise individuals who made the fraudulent statements.  *Id.* at 448.  In cases involving multiple defendants, a plaintiff is required to meet the Rule 9(b) standard as to *each* defendant against whom fraud is alleged.  *In re Consumers Power Co. Sec. Litigation,* 105 F.R.D. 583, 592-593 (E.D. Mich. 1985); *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F.Supp.2d 287, 315 (S.D. Ohio 2007), quoting *United States SEC v. Blackwell*, 291 F.Supp.2d 673, 686 (C.D. Ohio 2003).  In cases where a plaintiff groups various defendants together by referring generally to "defendants" in describing various specific acts of wrongdoing, "courts in these cases concluded that the complaints violated Rule 9(b) by failing to give defendants proper notice of the charges against them, so as to enable them to prepare a defense."  *In re Consumers Power Co. Sec. Litigation*, at 592.

Here, Plaintiff has made nonspecific, conclusory allegations, and has not set forth any particular activity by Block 100 (or any other Defendant), either collectively or individually, that amounts to fraud.  Plaintiff failed to identify any specific time, place, subject matter, identity or

specific involvement of precise individuals, or fraudulent statements made regarding any representative of Block 100. (See **Ex. C**, *Plaintiff's Complaint*). Further, Plaintiff failed to specifically identify which of the various Defendants are the subject of Plaintiff's allegations. (**Ex. C**, *Plaintiff's Complaint*, ¶ 50) ("some Defendants started a scheme to violate federal and state laws and then spy on Courser in order to 'dig up dirt on him[.]'").

> ### 2. Plaintiff has not alleged and cannot establish the requisite continuity to support his RICO claims.

As the Sixth Circuit has recently noted in *Courser v. Allard*, supra, to establish a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (footnote omitted). To prove a pattern of racketeering, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of ***continued criminal activity***." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (emphasis added). "For continuity to exist, there must be a threat of future criminal conduct." *Courser v. Allard*, 969 F.3d 604, 621 (2020). "If the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met." *Id, citing Aces High Coal Sales, Inc.*, 768 F. App'x 446, 456-57 (6th Cir. 2019).

As this Court and the Sixth Circuit have already determined, Plaintiff cannot maintain RICO or conspiracy to commit RICO claims because "Courser allege[d] a scheme that lasted no more than nine months and had but a single purpose and victim—to remove Courser from office. The alleged scheme was complete once Courser resigned, as nothing else remained to be done." *Courser v. Allard*, 969 F.3d 604, 621 (2020); see also **Ex. C**, Plaintiff's Complaint, ¶ 47, PageID.10 ("[]Defendants…in an effort to remove Courser from office and to damage his

livelihood…").  The same is true here.  Once Plaintiff was removed from office, the alleged "scheme" was complete.

### 3. Plaintiff relies on inadmissible hearsay.

In alleged support of his claims against Block 100, Plaintiff relies on text messages sent to Plaintiff and/or Ms. Cindy Gamrat (n/k/a Cindy Bauer) by nonparties.  (**Ex. C**, Plaintiff's Complaint, ¶ 38).  Plaintiff claims that these text messages demonstrate that someone gained unauthorized access to Plaintiff's Hotel room.  As a preliminary matter, Plaintiff has failed to authenticate the text messages in the course of this litigation as required by Federal Rule of Evidence 901.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Ev. 901(a).  None of alleged authors of the text messages, Mr. Gamrat, Mr. Horr and Mr. Krell, have been deposed in the present matter.  Plaintiff has not authenticated, or even attempted to authenticate, the alleged text messages in any way.

Further, the text messages are hearsay.  As a general rule, hearsay is not admissible.  Fed. R. Evid. 802.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  The text messages of Mr. David Horr, Mr. Joe Gamrat and Mr. Vincent Krell, are clearly out-of-court statements offered to prove the truth of the matter asserted and therefore must be excluded from consideration as hearsay.  See *Franklin Global Res. v. Lee*, 2016 U.S. Dist. LEXIS 193279 (S.D. Tex. Aug. 12, 2016) (**Ex. J**) ("[Plaintiff] also seeks to submit as summary judgment evidence a cell phone text message purportedly from [Defendant] to a recipient whom [Plaintiff] does not identify in the motion…The admissibility of evidence 'is governed by the same rules, whether at trial or on summary judgment.'  [Citation omitted].  The text message is not admissible

7

as summary judgment evidence because it is hearsay, and [Plaintiff] makes no argument that it falls under an exclusion or exception to the hearsay rule."); see also *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016) ("The Court cannot consider evidence at summary judgment that a jury could not consider at trial.").

Block 100 in no way participated in any conduct that constitutes racketeering activity under the statute, and Plaintiff has abjectly failed to sufficiently or properly plead or support his claims under RICO.  For these reasons, these claims must be dismissed.

**B.     Plaintiff's Wiretapping Claims Under 18 U.S.C. § 2511 and MCL § 750.540 Must Be Dismissed as They Are Time-Barred.**

Count III of Plaintiff's Complaint alleges violations of 18 U.S.C. § 2511 and MCL § 750.540, State and Federal wiretapping statutes.  A claim under the Federal Wiretapping Act is subject to a two-year statute of limitations, commencing from "the date upon which the claimant first ha[d] a reasonable opportunity to discover the violation."  18 U.S.C. § 2520(e). Plaintiff resigned from the House of Representatives on September 11, 2015.  In the present matter, Plaintiff states in his Complaint that the alleged wiretapping started in the "winter of 2015."  (See **Ex. C**, *Plaintiff's Complaint*, ¶ 23).  Plaintiff stayed at the Hotel on various occasions between January and May 2015, the last recorded date being May 21, 2015.  Plaintiff's Complaint was not filed until more than three years later, on November 2, 2018.  (See **Ex. C**, *Plaintiff's Complaint*). Accordingly, Plaintiff's claims under the Federal Wiretapping Act are time-barred because they were not made within two years of "the date upon which the claimant first ha[d] a reasonable opportunity to discover the violation."

Similarly, Plaintiff's State Law claim for wiretapping is time-barred as it was not brought within three years of the alleged injury as required by MCL § 600.5805(2).  Again, the last date on which Plaintiff stayed at the Radisson Hotel Lansing was May 21, 2015.  Plaintiff testified that

he was immediately aware that "someone" was allegedly surveilling or recording him during his stay at the Hotel, demonstrating that he had "discovered" the alleged conduct during one of his stays at the Hotel and, therefore, by May 21, 2015, at the latest. (See **Ex. F**, Plaintiff's Dep Trans, pp 73:22 to 74:13). Plaintiff's Complaint was not filed until more than three years later, on November 2, 2018. Accordingly, Plaintiff's State Law wiretapping claim is time-barred.

Even if Plaintiff's claims were not time-barred (which they are), Plaintiff has failed to produce any admissible evidence of any wrongdoing on the part of Block 100. According to Plaintiff, the Defendants unlawfully placed or allowed others to place listening devices and tracking devices in his hotel room. (**Ex. C**, *Plaintiff's Complaint*, ¶ 99). As with all of his claims, these claims are predicated on Plaintiff's allegations that the Hotel staff improperly provided third parties with access to his hotel room and information. As set forth above, Plaintiff's claims in this regard are based on inadmissible hearsay (i.e. alleged text messages from nonparties). Further, despite a lengthy investigation by the Michigan State Police and Michigan House of Representatives, no audio or visual recording of Plaintiff at the Hotel was ever determined to exist. Accordingly, there is not a single shred of admissible evidence to support Plaintiff's wiretapping claims. As such, these claims (Count 3) must be dismissed.

C. **Plaintiff's State Law, Tort-Based Claims for Civil Stalking (Count 4), Invasion of Privacy and Intrusion Upon Seclusion (Count 5), Tortious Interference with Business Relationships (Count 6), Intentional Infliction of Emotional Distress (Count 7), Negligence and Negligent Infliction of Emotional Distress (Count 8), and Conspiracy and Concert of Actions (Count 9) Must Be Dismissed as the Claims are Time-Barred and Plaintiff Cannot Establish that any representative of Block 100 Engaged in the Conduct Alleged**.

Counts 4 through 9 of Plaintiff's Complaint allege various State Law claims based in tort, as follows: civil stalking in violation of MCL § 600.2954 (Count 4), invasion of privacy and intrusion upon seclusion (Count 5), tortious interference with business relationships (Count 6),

intentional infliction of emotional distress (Count 7), negligence and negligent infliction of emotional distress (Count 8), and conspiracy and concert of action (Count 9).  These claims must be summarily dismissed as they are all time-barred by Michigan's three-year statute of limitations on tort claims.  MCL § 600.5805(2); *Terlecki v. Stewart*, 278 Mich App 644, 653; 754 NW2d 899 (2008) ("[A]n allegation of conspiracy is 'superfluous' as far as determining the applicable statute of limitations. [Citation omitted].  It follows that the conspiracy claim takes on the limitations period for the underlying wrong that was the object of the conspiracy.").

As set forth above, the last date on which Plaintiff stayed at the Hotel was May 21, 2015. **Ex. E**, Invoices, Bates #WIN000509).  Accordingly, all of the alleged conduct in Plaintiff's Complaint occurred more than three years before Plaintiff filed suit on November 2, 2018.  As such, Counts 4, 5, 6, 7, 8, and 9 are time-barred and must be dismissed.

Even if Plaintiff's State Law, tort claims (Counts 4 through 9) were not time-barred (which they are), Plaintiff has failed to establish that Block 100 is responsible or liable under the applicable causes of action.  All of these claims are predicated on two fallacies.  The first is that the Defendants engaged in illegal wiretapping and surveillance.  The second is that the Defendants "published" false and defamatory information about Plaintiff.  The Plaintiff has not offered any admissible support that either occurred.

With regard to Plaintiff's claims for "civil stalking" (Count 4), Plaintiff alleges that he was the "targeted victim of Defendants' harassment" and alleges that the harassment consisted of "*coordinating* surveillance, following Courser, reporting her [sic] whereabouts, and sending extortion texts[.]"  (**Ex. C**, Plaintiff's Complaint, ¶ 118) (italics added).  The Sixth Circuit has already determined that Plaintiff cannot establish that Michigan courts have "extended liability for civil stalking to persons [allegedly] coordinating or encouraging, rather than personally

perpetrating, stalking." *Courser v. Allard*, 969 F.3d 604, 620 (2020).  As in *Courser v. Allard*, a representative of Block 100 did not send the alleged "extortion texts" upon which Plaintiff relies in support of his claim for stalking.  Accordingly, this Court and the Sixth Circuit have already determined that Plaintiff's claims for "civil stalking" against Block 100 are baseless.

With respect to Plaintiff's claims of invasion of privacy and intrusion upon seclusion (Count 5), Plaintiff alleges that the Defendants' "wiretapping and surveillance constituted an unwarranted intrusion upon [his] seclusion or solitude, or into his private affairs."  (**Ex. C**, *Plaintiff's Complaint*, ¶ 126).  Michigan law recognizes the tort of invasion of privacy; the intrusion upon another's seclusion or solitude into another's private affairs constitutes an invasion of privacy.  *Lewis v. LeGrow*, 258 Mich. App. 175, 193, 670 NW2d 675 (2003).  To establish a prima facie case of intrusion upon seclusion, a plaintiff must establish (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to the reasonable man.  *Id.* at 193-194.  Plaintiff alleges that the Defendants (collectively) obtained private information about him by wiretapping and eavesdropping, and "published" misleading and defamatory information about him.  (**Ex. C**, *Plaintiff's Complaint*, ¶ 129-133).

As set forth above, Plaintiff has failed to set forth any shred of admissible evidence that Block 100 engaged in any wiretapping or surveillance of Plaintiff.  Further, Block 100 did not "publish" any private information about Plaintiff.  Instead, Plaintiff's private affairs became a matter of public interest when Plaintiff himself attempted to cover up his affair with Representative Gamrat when he, himself, circulated a "false flag" email. (**Ex. B**, *The Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy*; see also **Ex. D**,

11

Opinion, ECF No. 67, *Courser v. Michigan House of Representatives*, case no. 1:18-cv-882, PageID.2274, "Courser's subsequent false-flag-gay-sex email to his constituents[]").

Also, as in *Courser v. Allard*, Plaintiff's claim for tortious interference with business relationships (Count 6) must be dismissed because "Courser fails to . . . identify[] a specific business relationship or alleg[e] that Defendants knew that their actions would harm a specific business relationship." *Courser v. Allard*, 969 F.3d 604, 621 (2020) (citing this Court). Here, Plaintiff alleges that the Defendants knowingly "published…misleading and defamatory articles[]" about Plaintiff that impacted Plaintiff's "valid business relationship or expectancy with his clients[.]" (**Ex. C**, *Plaintiff's Complaint*, ¶¶ 136, 137). A prima facie claim requires a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, and an intentional interference by the defendant causing a termination of the relationship or expectancy and resulting in damage to the plaintiff. *Dalley v. Dykema Gossett, PLLC*, 287 Mich. App. 296, 323, 788 NW2d 679 (2010), quoting *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan (On Remand)*, 217 Mich. App. 687, 698-599, 552 NW2d 919 (1996). A plaintiff must demonstrate that a defendant acted both intentionally and either improperly or without justification. *Id*. To establish that a defendant's conduct lacked justification and showed malice, "the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id*. at 324, quoting *BPS Clinical Laboratories* at 699.

First, none of the Defendants in this current iteration of Plaintiff's lawsuit "published" any "articles" about Plaintiff. It is clear that these allegations are merely recycled from Plaintiff's allegations against *The Detroit News*, which, again, resulted in Plaintiff and his attorney being ordered to pay $79,701.63 in sanctions to *The Detroit News* for filing a frivolous lawsuit. Second,

Plaintiff has failed to prove the existence of any valid business relationship or expectancy that Block 100 had any knowledge of, nor has Plaintiff alleged any conduct of any representative of Block 100 which could amount to interference with those relationships by Block 100. Accordingly, Plaintiff's claim for tortious interference with business relationships (Count 6) must be dismissed.

Similarly, Plaintiff alleges intentional infliction of emotional distress (Count 7), vaguely alleging that the "Defendants' conduct of wiretapping and surveillance was widely regarded as extreme and outrageous conduct." (**Ex. C**, *Plaintiff's Complaint*, ¶ 143). The elements of intentional infliction of emotion distress are (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Moore v. City of Detroit*, 252 Mich. App. 384, 389, 652 NW2d 688 (2002). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Johnson v. Wayne County*, 213 Mich. App. 143, 161, 540 NW2d 66 (1995).

In addition to the fact that Plaintiff's State Law tort-claims are time-barred and that Plaintiff has failed to set forth a shred of admissible evidence against Block 100. Plaintiff's intentional infliction of emotional distress claim must also be dismissed because Plaintiff has failed to establish any physical manifestation of his alleged, severe emotional distress. See *Henry v. Dow Chem. Co*., 473 Mich. 63, 79, n.9 (2005). Accordingly, Plaintiff's claim for intentional infliction of emotional distress (Count 7) must be dismissed.

Plaintiff also alleges negligence and negligent infliction of emotional distress (Count 7), vaguely alleging that the "Defendants' conducted wiretapping and surveillance and distributed misleading and false information in order to cause damage to Courser." (**Ex. C**, *Plaintiff's*

*Complaint*, ¶ 147).  It is well-established that the elements of a prima facie case of negligence are that: (1) the defendant owed the plaintiff a legal duty; (2) the defendant breached the legal duty; (3) the plaintiff suffered damages; and (4) the defendant's breach was a proximate cause of the plaintiff's damages.  *Hill v. Sears, Roebuck & Co*., 492 Mich. 651, 661; 822 NW2d 190 (2012). Here, Block 100 did not breach any duty to Plaintiff, as there is no evidence that any employee or representative of Block 100 played any part in the allegations contained in Plaintiff's Complaint. Further, it is the position of Block 100 that Plaintiff did not suffer any damages as a result of the conduct of anyone other than himself.

The elements for negligent infliction of emotional distress (referred to as "bystander liability") are: (1) the injury threatened or inflicted on the third person must be a serious one, or of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock "fairly contemporaneous" with the accident."  *Wargelin v Mercy Health Corp*, 149 Mich App 75, 81; 385 NW2d 732 (1986).  In response to arguments that the tort should be expanded to include injury by publication of false statements, the Michigan Court of Appeals has stated that "we decline to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result."  *Duran v The Detroit News*, 200 Mich App 622, 629; 504 NW2d 715 (1993).  Clearly, the tort of "negligent infliction of emotional distress" is inapplicable here.

Finally, with regard to Plaintiff's claims of "Conspiracy and Concert of Actions" (Count 9), as in the prior cases, "[t]he conspiracy count is bereft of factual content; it consists entirely of

legal conclusions." (See **Ex. D**, Opinion, ECF No. 67, *Courser v. Michigan House of Representatives*, case no. 1:18-cv-882, PageID.2786). As this Court has noted:

> "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Specialized Pharmacy Servs., Inc. v. Magnum Health & Rehab of Adrian, LLC*, 2013 WL 1431722, at *4 (E.D. Mich. Apr. 9, 2013) (citation omitted). Conspiracy claims must be pled with some degree of specificity. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009). Thus, vague and conclusory allegations without supporting facts will not do. Id. The doctrine of concert of action presents a separate basis for liability and applies when a plaintiff shows "that all defendants acted tortiously pursuant to a common design." *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 338, 343 N.W.2d 164, 176 (1984).

(**Ex. D**, Opinion, PageID.2787).

Here, Plaintiff's claim that Block 100 "conspired" with some nonparty "in an effort to remove Courser from office and to damage his livelihood" is the height of absurdity. There is absolutely no evidence or plausible motive whatsoever that Block 100 has (or had) any interest whatsoever in "remov[ing] Courser from office." Plaintiff's claim for civil conspiracy and concert of actions must be dismissed because Plaintiff cannot establish liability under any underlying tort. See *Urbain v. Beierling*, 301 Mich. App. 114, 131-132, 835 NW2d 455 (2013). Plaintiff's claims are outrageous, unsupported and untrue, and, as occurred in other cases, the present matter must be dismissed.

## V.     CONCLUSION

Despite the voluminous pleadings, this is a simple case. The facts are not in dispute and the law is clear. It has already been determined that Plaintiff cannot establish the requisite "continuity" to support his RICO claims (Counts 1 and 2). Plaintiff's federal and state wiretapping and eavesdropping claims (Count 3) are time-barred. Plaintiff's state law tort claims (Counts 4 through 9) are also time-barred. Finally, even if Plaintiff's claims were not time-barred, Plaintiff cannot demonstrate the existence of a shred of evidence which supports his claim that any

representative of Block 100 "conspired" with nonparties to have Plaintiff removed from office. Plaintiff's allegations are absurd and frivolous.

Accordingly, Block 100 should be granted summary judgment, and all claims against it should be dismissed.

WHEREFORE, Defendant, BLOCK 100 LIMITED PARTNERSHIP, respectfully request that this Honorable Court grant this motion and dismiss the Plaintiff's claims in this matter with prejudice pursuant to Fed. R. Civ. P. 56 for the reasons stated above and in the attached Brief.


VANDEVEER GARZIA, P.C.


By: /s/ David B. Timmis
      **DAVID B. TIMMIS (P40539)**
      **DAVID Q. HOUBECK (P77002)**
      Attorney for Defendants Radisson
      Hotels International Inc., Radisson Group, Inc.,
      Carlson Rezidor Hotel Group, Block 100
      Limited Partnership,
      Winegardner & Hammons, Inc. and
      Winegardner & Hammons Hotel Group
      840 West Long Lake Road, Suite 600
      Troy, MI 48098
      (248) 312-2800/(248) 879-0042 (fax)
      dtimmis@vgpclaw.com
      dhoubeck@vgpclaw.com

Dated:  June 18, 2021


### PROOF OF SERVICE

I certify that on June 18, 2021, I filed the foregoing document with the Clerk of the Court via the efiling system, which will deliver notice of same to all counsel of record.

/s/ Melissa Grima